The next case today, number 231744, Erasto Román Mercado v. Hyannis Air Service, Inc. Counsel for Appellant, please come up and introduce yourself on the record to begin. Listen, good morning. May it please the court, Eugenio J. Gelsimone today on behalf of plaintiff and respectfully I request, Your Honor, two minutes for rebuttal. Okay. Please proceed. Thank you. Good morning again, Your Honors. The matter before us today is one in which plaintiff moves to that it's a factually dependent inquiry. And in particular, we have one which carries genuine and trial-worthy issues of material fact before us. Specifically, in dealing with Law 115 of Puerto Rico, which is the anti-retaliation statute, we have presented for the district court and it was in fact held that out of the three requirements, the first two were met. That was basically what's before us is the third prong. Correct. The causal connection between the first two. And we respectfully submit that in view of the fact that there is a litany of a record replete with evidence indicative of the adverse employment animus, we presented before the district court at least eight that I can number and they're part of the record in terms of what those acts were. And it's important to bear in mind, Your Honors, that when we're taking into consideration this matter, like Judge Thompson indicated in the case of Rivera, Rivera, and Medina, Medina, the district court is not meant to be fact-finders and that's truly at the heart of the issue here. Why I say that, going back to those eight examples, is the retaliation essentially, if I can make sense of the statement, began before it even started. And what I mean by that is we have a situation in which plaintiff was constantly requesting that he be provided the report for going to the fund. And what he was told is, no, you have private health insurance, you use your private health insurance. He asked for the report and, in fact, in the finding of the lower court, it specifically said in one of the undisputed facts that he did request for that report and it was denied. Your Honors, I respectfully submit to you that had the acts and omissions of defendant not occurred, we would not be here. In other words, we're talking about an accident that occurred in April 2017 and plaintiff was constantly requesting this in order to go to FONDO. When he finally gets a referral, yeah, the report gets submitted, but the report gets submitted not until he has actually already been started to receive the treatment from FONDO. So we have factual scenarios where plaintiff was made to use his private insurance, he was refused to be provided with a plaintiff's report. And I think very significant, particularly in this case, is the fact that we have evidence that since February of 2018, bearing in mind that he reports November 30th of 2017 to the fund, in February of 2018, there were statements which we have on the record stating of the intent to dismiss Mr. Roman from his position. Counsel, after your client completed the period available to him under the Family Leave Act, didn't a substantial additional time pass before the company even made any effort to assure themselves that he'd be coming back? I mean, they did not terminate him immediately when he couldn't come back after the expiration of the Family Medical Leave Act. Isn't that correct? Judge, you are correct that the Family Leave Act expired in February of 2018. And that's why I made the reference that at that point, there's already a discussion demonstrating the animus for purposes of terminating him. He's terminated in June. Well, actually, the letter is sent out June, but it's retroactive to May 26. So there's about a three-month period which transpires in which from the time you're indicating that the Family Leave Act expired to the point that he was actually terminated. That's not to say that that happened. Yes, that happened. But taking into consideration the totality of the circumstances, the fact that we have the actions and omissions I've indicated in addition to those, the constant calls and emails from the supervisor asking me, when are you coming back? And they're constantly getting reports. What's wrong with them doing that? They're operating with only two people, I guess, at the Mayaguez Airport when they've had three people, including your client. They're continuing to operate with only two when the record supports the proposition they needed three, and so they want to know when your client's coming back. What's wrong? What's wrong with that? Well, Your Honor, I suppose it's not so much a question of what is wrong. Well, let me answer that directly. The issue with that is that the defendant is getting reports on a monthly basis, which are part of the record, from the state insurance fund as to what is his status. He's going into treatment for X, Y, Z until such a date. And subsequent, another report comes in. So the fact that he's under these circumstances, he just had neck surgery in February, and he's getting pestered with all of these constant, not requirements, but requests of, hey, what's going on? It's not as if they don't know. They actually do know about what's going on in terms of his treatment and how it's moving forward. But taking those persistent messages and calls taken together with what we were able to ultimately discover through depositions and written discovery that there was, in fact, a pattern. For all intents and purposes, Your Honors, the defendant, while applying federal law and complying with FMLA, they nonetheless renegated the Puerto Rico statute to the extent that it's as if not as important. If I may explain myself on that issue is it all adds together one plus one. And what I mean is he requests for the report. He wanted to go to the fund, but he was unable to do so. Counsel, that seems like you're now arguing a claim that you said you weren't pursuing on appeal because we're just here on the retaliation claim, not the other claims that you had below. And I guess just to follow up on Judge Lopez's question, you're absolutely right that a reasonable jury could conclude that the defendant was thinking about terminating your client's job beginning in late February or March or April. But as Judge Lopez said, what about that is retaliatory? In other words, when an employee is not able to go back to work for I think it was about four months at that point and they've down a person, they need three people, they only have two, why is that retaliatory rather than just a business operational need? We need to have a person in that role. And if this person can't fill that role, we need to find somebody else. Because that's really the key issue, as Judge Lopez said at the beginning. Is it pretextual or is it that they just have a business need for somebody to be in that position? So can you really try and hone in on why it's pretextual? I most certainly can, Your Honor. And you're absolutely right. That is really the crux of the case in this matter before us. And as we're articulating for two reasons, one procedurally, one substantively, the defense being raised of an operational need was waived when the affirmative defense was not raised specifically as to that issue. But perhaps it's not as important as the fact that we have before us, as I indicated, a fact-heavy disputed set of issues case. And what I mean with that, a jury, as you very well elaborated, a jury, a finder of facts could have actually interpreted all of those examples I laid out as indicative of the intent, that it was not for purposes of operational needs, but rather that since before they knew if he submitted to the fund, they would not have control over him as they did while he was working and submitting himself to medical care with the private health care providers. So in that regard, it takes back the element of the fact that the court is a serpent, the fact finder in this case, when we take the totality of all these instances I've cited too that are on the record, that could have very well been interpreted, that look, it's not because it's an operational need. It's really because you had the intent, as it was indicated, at least that we know from the discovery since February. Thank you, Your Honors. Thank you. Attorney Leal-Gonzalez, please come up and introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court, I am Tatiana Leal-Gonzalez, representing the Appellee Hyenas Air Service, Inc., also doing business as K-Bear. A termination for just cause cannot be retaliatory. The issue before us is whether a plaintiff can establish that his termination was solely due to him seeking treatment before the State Insurance Fund, as required under Puerto Rico Law 115. The clear letter of Law 115, consistent with Puerto Rico Supreme Court precedent and federal precedent, follows a but-for causation standard, meaning that plaintiff, he must prove that but for his decision to seek treatment from the State Insurance Fund, he would not have been terminated. In other words, under Law 115, he needs to show You're arguing that because the Law 80 just cause finding was not appealed, that's binding, and therefore, there's just cause, and therefore, you can't sue under 115, correct? Correct, yes. Since he did not appeal the binding determination. Counsel, with all due respect, I think that's frankly almost a silly argument. I mean, the district court, in making its 115 ruling, basically incorporated the findings it had made with respect to Law 80, so why? How can you argue that because they did not appeal from the Law 80 ruling, that somehow they're precluded from appealing Law 115? I just don't, despite using the word silly, I will say respectfully, I don't quite understand how you could argue that. Of course. So, our argument is based on the fact that for a plaintiff to establish a Law 115 claim, the only reason for his termination needs to be the retaliation that he engaged in a protected activity. And since the district court already resolved or determined that his termination was due to operational needs, to his protected lease having expired, and to the fact that there was uncertainty on when he was going to return to work, then we cannot also argue that there's another fourth reason, and that would be, for his termination, and that would be that he engaged in this protected activity of going to the state insurance fund. That's what we're arguing here, that because he did not appeal the Law 80 determination of the district court, that there was just cause based on these three reasons, then he cannot now allege that there's another fourth reason for his termination, and it's retaliation. Also, on that note, the district court also, when evaluating the Law 80 claim, they also evaluated the pretext arguments that are the same arguments that he is raising before or under Law 115, and it has already found that there was, in fact, an operational need, that there is no pretext on that justification, that, in fact, his protected leave had expired, and it was not immediately after his FMLA leave expired that he was terminated, but three months after, when there was no certainty of whether he was going to come back to work, because although he did state that he was going to, supposed to return to work on June 2019, he also stated that he was going to start physical therapy sessions, and he didn't know how that calendar was going to move forward, and at that time, there had already been eight extensions for his treatment with the state insurance fund, and on top of that, on May, we began calling him to know if he was going to, in fact, return to work, and he just didn't respond. So, counsel, yes. I do have a question for you about that, because you can tell me if I'm wrong, but as I read the briefs, I thought the briefs pointed out that actually the supervisor, Mr. Calo, I believe is his name, had decided to terminate the plaintiff in late April and was going to take him out to lunch or dinner, I can't remember what kind of meal it was, to let him know that his job was ending, so I'm just curious why anything that happened in May would be relevant, given that the decision had already been made. Yes, Your Honor. On April, when the plaintiff informed him that his treatment was going to be extended until June, and that he was going to be supposed to return to work on June 13, and also stated that he was going to be engaging in therapy sessions, there was a determination made that they were going to take him out to lunch to let him know about his replacement. However, that lunch did not take place because the plaintiff just couldn't make it. And then we gave him additional time to see if he was going to return to work, but he didn't, and that's when on May we started calling him to see if he was going, what was his status, and he didn't respond. So, because he didn't respond, we sent him the termination letter. Counsel, with respect to that termination letter, it is striking that it says absolutely nothing about the operational needs of your client. It just talks about failure to contact them to keep in touch. In this area of the law, we have often said that these shifting explanations can be evidence of pretext. How do you explain the fact that now that you emphasize operational needs as justification for his termination, and the district court really accepted that argument, why doesn't this letter generate a genuine issue of material fact as to what the real reason was, whether operational needs was the real reason, when it says nothing about operational needs? Well, Your Honor, the termination letter actually does not provide any reason at all for his termination. And under Puerto Rico law, there is no requirement or obligation for employers to state what is the reason for termination in an employment letter. That's what Puerto Rico doesn't require. But if it's not there, as Judge Lopez says, doesn't that generate a genuine issue of material fact, then a jury would have to determine. Again, there's no requirement, but if it hasn't been done, there may be something fishy. Particularly somebody like the plaintiff who, with everything that's going on, if it's not in the letter, it permits the jury to go one way or another. So we wouldn't say it does not show pretext, because ever since March 2019, and there's evidence that there have been communications internally in Cape Verde regarding the operational need of the station, and they were considering whether they could... Okay, but that's evidence, and that favors you. But this, in theory, a fact finder could use it to think otherwise. And shouldn't all that go, your favorable evidence plus this, go to the jury, not the summary judgment decision? Well, the termination letter does not state what is the reason for his termination. It only states that there had been efforts being made from Cape Verde to communicate with them. But, counsel, why did the letter state that, if that wasn't, again, in terms of what a reasonable jury could decide? Because when I read the letter, a common sense reading, if I was receiving it, was that was the reason why I was being terminated. It's the only thing that the letter says, really, other than the job is ending. And it's the first thing the letter says. It starts off by saying, you've been unable to reach you. So why couldn't somebody reading that letter interpret it as focusing on the failure to respond as the reason for the termination? Well, it is a fact that Cape Verde had been trying to contact him or just to establish some physical connection with him ever since April when they invited him to lunch. And it didn't go through. And then on May, they did, again, try to contact him via phone calls and text messages. And he didn't respond. So it is consistent that Cape Verde was trying to contact him, and he just didn't respond. Because there's no inconsistency. Yeah, no, I understand that you're saying that it reflects the facts. But you're arguing to us that the letter provides no reason for the termination. And I'm asking you, given that the letter starts off with the statement that we've tried to reach you multiple times, and you haven't responded, and then proceeds to say your job is ending, why isn't a reasonable, a potential reasonable interpretation of it that a jury could make is that is the reason that was offered, and that wasn't actually the real reason? So, again, just following up on all of our questions, why isn't there a jury issue here? Well, because there is no inconsistency between the fact that we have – there is no inconsistency between the fact that we have been trying to contact him. It is a fact. And because we didn't – because there was no connection with him, we weren't able to contact him and talk to him, then we were sending him this letter. But it is not the main – it is not the reason for his termination. Counsel, you're – I think in response to this argument that Paul made, you point out that there are – excuse me – that there are internal communications indicating concern about his unavailability, when he's going to come back. And there's this communication from an airline official named Kennelly telling another official that now that the Family Medical Leave Act has expired, he can be terminated immediately. I mean, you cite that, I guess, as an example of consistency of the company's position. But why couldn't – as Judge Hoffman and Judge Rickman are suggesting, why – okay, that's your defense. But why shouldn't that defense, if you will, go before a jury to decide whether that's really what was going on here or whether there was something else, maybe retaliation? Well, there can't be a finding of retaliation because the protected leave had expired. And he was not terminated immediately after it expired. He was terminated nearly three months after. So in any case, what that shows is good faith from the employer just trying to give him extra time to see if he was going to be able to return to work. But he wasn't able to return to work. And, in fact, it is uncontested that he was not going to be able to return to work until July 2020. And after that medical leave act expired, he was exposed without recourse to retaliation on the part of the company? Are you saying – No, not that he was exposed to retaliation. Since he was not under a protected leave and there was an operational need to have three cross-training agents in the station, then an employer is not required to leave an open position indefinitely while an employee is under a leave of absence. And it is not protected. Thank you, Counsel. Any more questions? Thank you. Okay. Mr. Hayhill, two minutes rebuttal. And please identify yourself again. Eugenio Hayhill, Simonet, on behalf of plaintiff. Going back to Your Honor's question, you're absolutely right in terms of where the crux of this matter lies. And I think we can see from both of the parties' arguments and the record before this court that ultimately the underlying issue really and truly is that the district court took away the function of the fact finder in this matter when there is a litany of disputed genuine issues of fact which arise all the way from the beginning prior to soon after the injury occurred all the way up until the end. And the fact of the matter cannot be taken away, Your Honors, is that there is a deposition transcripts and there's written communications obtaining discovery like Your Honors indicated in terms of the emails. We have the April email and we have the communications dating as far back. Again, this is what would be discovered as February. So we respectfully submit on the briefs and arguments, Your Honors, that there is sufficient record for this matter to be remanded because there are genuine facts that are in dispute and the matter should proceed to a jury. Thank you very much. Thank you, Your Honors. That concludes arguments in this case.